IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| MHS HOLDING ONE, INC. f/k/a<br>MCCLELLAND HOME HEALTH PHARMACY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MHHP ACQUISITION COMPANY LLC and<br>OMNICARE, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO.<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

### INTRODUCTION

1. In this action plaintiff MHS Holding One, Inc., formerly known as McClelland Home Health Pharmacy, Inc., seeks damages and enforcement of the terms of an Asset Purchase Agreement dated as of February 2, 2004 (the "Agreement") with defendants MHHP Acquisition Company LLC and Omnicare, Inc., pursuant to which the latter purchased the plaintiff's assets. Defendants have breached several terms of the Agreement and have failed and refused to pay MHS Holding One, Inc. certain amounts owed to it pursuant to the Agreement. Also, plaintiff seeks declaratory judgment with regard to potential adjustment of the acquisition purchase price.

### PARTIES

2. Plaintiff MHS Holding One, Inc. ("Seller") (known as McClelland Home Health Pharmacy, Inc.) is a corporation organized under the laws of the Commonwealth of Massachusetts, with a principal place of business at 85 Interstate Drive, West Springfield,

Massachusetts. Seller is in the business of long term care and retail sales of pharmaceutical drugs and sundries.

3. Defendant MHHP Acquisition Company LLC ("Purchaser") is a limited liability company organized under the laws of the State of Delaware, with a principal place of business in 85 Interstate Drive, West Springfield, Massachusetts.

4. Defendant Omnicare, Inc. ("Omnicare") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 100 East RiverCenter Boulevard, Covington, Kentucky. Omnicare is a Fortune 500 company engaged in the business of pharmaceutical sales and related services.

## JURISDICTION AND VENUE

5. This court has diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that defendants Purchaser and Omnicare are citizens of Delaware and plaintiff Seller is a citizen of Massachusetts and the amount in controversy between them exceeds $75,000. Pursuant to Article 10.9(a) of the Agreement, defendants have consented to this Court's personal jurisdiction over them.

6. Venue is proper in this court pursuant to 28 U.S.C. § 1391(a) because the defendants Purchaser and Omnicare reside within this judicial district. Venue is independently proper in this court because, pursuant to Article 10.9(a) of the Agreement, the parties have consented to venue in the federal court located within New Castle County, Delaware.

## **STATEMENT OF FACTS**

### **The Agreement**

7.      On February 2, 2004 (the "Closing Date"), the parties executed the Agreement and closed on the sale of assets from Seller to Purchaser.

8.      Pursuant to Article 2.1 of the Agreement, the purchase price for the asset acquisition was $8.5 million, with an initial cash payment of $7.0 million.  The Agreement provides that in certain circumstances Purchaser is required to pay additional post-closing amounts to Seller consisting of a Purchase Price Adjustment, First Deferred Payment, and Second Deferred Payment.

9.      Seller has fulfilled and properly performed all of its obligations under the Agreement.

10.     Pursuant to Article 10.14 of the Agreement, "Omnicare hereby unconditionally guarantees the payment and performance of any and all of Purchaser's liabilities and obligations hereunder and those under any ancillary agreements or documents executed and delivered in connection with this Agreement.  Seller and Stockholders may seek remedies directly from Omnicare without first exhausting their remedies against Purchaser."

### **Purchaser and Omnicare Fail to Provide Timely Information Regarding The Purchase Price Adjustment**

11.     Pursuant to Article 2.2(a) of the Agreement, a Purchase Price Adjustment was required to be made based upon the Actual Net Asset Value of the business as of the Closing Date measured within a range of $4.1 million to $5.0 million, i.e., the "Collar." If the Actual Net Asset Value is within the Collar, there shall be no adjustment to the Purchase Price.  If the Actual

Net Asset Value is less than the Collar, the Purchase Price shall be adjusted downward. If the Actual Net Asset Value is greater than the Collar, the Purchase Price shall be adjusted upward.

12. Pursuant to Article 2.2(a) of the Agreement, Purchaser was required to present Seller with a draft Final Closing Date Statement establishing the Actual Net Asset Value (the "Preliminary Statement") not more than sixty (60) days after the Closing Date. Purchaser and Omnicare failed to present Seller with such a Preliminary Statement within such time.

13. More than eighteen (18) months after the Closing Date, well beyond the sixty (60) day period permitted by the Agreement, Purchaser and Omnicare finally began to address the preparation and submission of a Preliminary Statement by presenting Seller with a document titled "Final Closing Date Statement" and marked "DRAFT For Discussion Purposes Only" proposing an Actual Net Asset Value below the Collar. Pursuant to Article 2.2(a) of the Agreement, Seller timely notified Purchaser that it disputed calculations set forth in the DRAFT "Final Closing Date Statement" document. In response, Purchaser and Omnicare indicated their intent to resolve the disputed calculations but nevertheless failed to take sufficient action to resolve the dispute.

14. The Actual Net Asset Value of the business was within the Collar.

15. Pursuant to Article 2.1(b) of the Agreement, the Purchase Price Adjustment amount was required to be determined and paid on or before the Six (6) Month Anniversary of the Closing Date, i.e., by August 2, 2004, if any such adjustment were due.

<strong><u>Purchaser and Omnicare Fail to Pay The First Deferred Payment</u></strong>

16. Pursuant to Article 2.3 of the Agreement, the First Deferred Payment in the amount of $500,000 was required to be made by Purchaser to Seller, provided that the Minimum

Serviced Bed Threshold was greater than or equal to 3,300 beds at the time of the Twenty (20) Month Anniversary of the Closing Date, i.e., by October 2, 2005.

17. Pursuant to Article 2.3(e) of the Agreement, Purchaser was required to present Seller with its calculation of the First Deferred Payment within forty-five (45) days of the Twenty (20) Month Anniversary of the Closing Date, i.e., by November 16, 2005. Purchaser and Omnicare failed to present Seller with its calculation of the First Deferred Payment within the time required by the Agreement or at any time thereafter.

18. Pursuant to Article 2.3(f) of the Agreement, the First Deferred Payment was required to be paid within sixty (60) days after the Twenty Month Anniversary of the Closing Date, i.e., by December 2, 2005.

19. The Minimum Serviced Bed Threshold of 3,300 beds as of October 2, 2005, has been met, and Seller is entitled to payment of $500,000 pursuant to the terms of the Agreement.

20. Purchaser and Omnicare has failed to pay the First Deferred Payment by December 2, 2005 or at any time thereafter.

### Purchaser and Omnicare Fail to Pay The Second Deferred Payment

21. Pursuant to Article 2.4 of the Agreement, the Second Deferred Payment was required to be paid by Purchaser to Seller. Seller is entitled to be paid $700 for each Serviced Bed exceeding the Minimum Serviced Bed Threshold of 3,300 beds at the Two Year Anniversary of the Closing Date i.e., at February 2, 2006, up to a maximum Second Deferred Payment of $1 million.

22. Pursuant to Article 2.4(c) of the Agreement, Purchaser was required to present Seller with its calculation of the Second Deferred Payment within forty-five (45) days of the Two

Year Anniversary of the Closing Date, i.e., by March 19, 2006. Purchaser and Omnicare failed to present Seller with its calculation of the Second Deferred Payment within the time required by the Agreement or at any time thereafter.

23. Pursuant to Article 2.4(d) of the Agreement, the Second Deferred Payment was required to be paid within sixty (60) days after the Two Year Anniversary of the Closing Date, i.e., by April 3, 2006.

24. Purchaser and Omnicare have failed to pay the Second Deferred Payment by April 3, 2006 or at any time thereafter.

25. In connection with the Agreement, Seller's stockholder Patrick F. Downing entered into an employment agreement with Omnicare to operate and supervise the assets and business Seller sold to Purchaser. Approximately two months after the Closing, Mr. Downing was asked by Omnicare and readily agreed, for no additional compensation, to accept additional responsibilities to manage Value Pharmacy, another acquisition by Omnicare. Mr. Downing succeeded in saving almost 2,000 serviced beds at Value Pharmacy as to which final notice of termination had been given by Value Pharmacy's customers before or shortly after Mr. Downing accepted the added responsibilities of managing Value Pharmacy.

26. The substantial time and effort that Mr. Downing devoted to saving the approximately 2,000 beds and turning around the declining Value Pharmacy business consumed significant and valuable time which Mr. Downing otherwise could and would have devoted to increasing the number of serviced beds in the McClelland business. Had Mr. Downing so increased the beds in service at McClelland, the number of serviced beds at the Two Year Anniversary would have exceeded the Minimum Serviced Bed Threshold by more than 2,000

beds. Implicit in Defendants' request that Mr. Downing take on such additional duties to manage Value Pharmacy, and applicable as a matter of equity, was the agreement to credit Seller with the number of serviced beds saved at Value Pharmacy, at the Two Year Anniversary of the Agreement, for the purpose of the determining the Second Deferred Payment due Seller from Purchaser at a value of $700 per bed in excess of the 3,300 Minimum Serviced Bed Threshold. As such, the calculation of the Second Deferred Payment should include the 2,000 beds that Mr. Downing saved for the Value Pharmacy business.

## STATEMENT OF CLAIMS

### COUNT I

### (Declaratory Judgment – Purchase Price Adjustment)

27. Seller repeats and realleges the allegations contained in paragraphs 1 through 26 of this Complaint, as if fully and separately set forth herein.

28. Seller asserts that the Actual Net Asset Value of the business was within the Collar and therefore, there should be no adjustment to the Purchase Price.

29. Upon information and belief, Purchaser and Omnicare assert that the Actual Net Asset Value of the business was less than the Collar and therefore the Purchase Price should be adjusted downward.

30. There is a substantial and immediate actual controversy between the parties, who have adverse legal interests to one another with respect to the present disputes regarding the parties' rights and obligations, and Seller has failed to comply with the time deadlines set forth in the Agreement for determination of the Purchase Price Adjustment.

31. Accordingly, Seller requires a judicial determination of the rights and duties of the parties with respect to the Purchase Price Adjustment, declaring that the Actual Net Asset Value is within the Collar and that therefore no price adjustment is required.

## COUNT II

### (Breach of Contract – First Deferred Payment)

32. Seller repeats and realleges the allegations contained in paragraphs 1 through 26 of this Complaint, as if fully and separately set forth herein.

33. By the conduct described above, Purchaser and Omnicare have breached, and continue to breach the Agreement, and in particular have failed and refused to pay the First Deferred Payment as required by the Agreement.

34. As a direct and proximate result of breaches of the Agreement by Purchaser and Omnicare, Seller has suffered, and will continue to suffer, substantial monetary losses in an amount to be proven at trial, including but not limited to the amount of $500,000 comprising the First Deferred Payment, plus consequential damages, including but not limited to loss of use of the money from the time the payment was due and owing.

## COUNT III

### (Unjust Enrichment – First Deferred Payment)

35. Seller repeats and realleges the allegations contained in paragraphs 1 through 26 of this Complaint, as if fully and separately set forth herein.

36. The wrongful acts or omissions by Purchaser and Omnicare, including their failure to pay the First Deferred Payment or otherwise adequately compensate Seller pursuant to

the Agreement, have caused Purchaser and Omnicare to be unjustly enriched to the detriment of Seller in the amounts referred to in paragraph 34 above of Count II of this Complaint.

37. If the First Deferred Payment remains unpaid, Purchaser and Omnicare will gain a windfall that in equity should be corrected.

## COUNT IV

### (Breach of Contract – Second Deferred Payment)

38. Seller repeats and realleges the allegations contained in paragraphs 1 through 26 of this Complaint, as if fully and separately set forth herein.

39. By the conduct described above, Purchaser and Omnicare have breached, and continue to breach the Agreement, and in particular have failed and refused to pay the Second Deferred Payment as required by the Agreement.

40. As a direct and proximate result of breaches of the Agreement by Purchaser and Omnicare, Seller has suffered, and will continue to suffer, substantial monetary losses in an amount to be proven at trial, including but not limited to the amount of $1,000,000 comprising the maximum Second Deferred Payment, plus consequential damages, including but not limited to loss of use of the money from the time the payment was due and owing.

## COUNT V

### (Unjust Enrichment – Second Deferred Payment)

41. Seller repeats and realleges the allegations contained in paragraphs 1 through 26 of this Complaint, as if fully and separately set forth herein.

42. The wrongful actions by Purchaser and Omnicare, including their failure to pay the Second Deferred Payment or otherwise adequately compensate Seller pursuant to the

Agreement, have caused Purchaser and Omnicare to be unjustly enriched to the detriment of Seller in the amounts referred to in paragraph 40 above of Count IV of this Complaint.

43. If the Second Deferred Payment remains unpaid, Purchaser and Omnicare will gain a windfall that in equity should be corrected.

## COUNT VI

### (Omnicare's Guarantee)

44. Seller repeats and realleges the allegations contained in paragraphs 1 through 43 of this Complaint, as if fully and separately set forth herein.

45. Pursuant to Article 10.14 of the Agreement, Omnicare unconditionally guaranteed the payment and performance of any and all of Purchaser's liabilities and obligations in connection with this Agreement, and Seller may seek remedies directly from Omnicare without first exhausting their remedies against Purchaser.

46. As the unconditional guarantor of Purchaser's liabilities and obligations in connection with the Agreement, Omnicare is obligated to pay Seller all monetary losses caused by Purchaser, including but not limited to the First Deferred Payment, the Second Deferred Payment and all consequential damages, including but not limited to loss of use of the money from the time each such payment was due and owing.

WHEREFORE, Plaintiff MHS Holding One, Inc. respectfully requests that this Court:

a. Enter judgment on its behalf against defendants, and each of them, on Count I of the Complaint, declaring that the Actual Net Asset Value of the business is within the Collar and that no adjustment to the Purchase Price is warranted;

b.   Enter judgment on its behalf against defendants, and each of them, on Counts II, III, IV and V of this Complaint, awarding monetary damages to plaintiff in the amounts to be proved at trial;

c.   Enter judgment on its behalf against defendant Omincare on Count VI of the Complaint, in the amounts to be proved at trial.

d.   Award costs and reasonable attorneys' fees; and

e.   Grant such other relief as this Court deems just and appropriate.

ASHBY & GEDDES

Lawrence C. Ashby (I.D. #468)
Philip Trainer, Jr. (I.D. #2788)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P. O. Box 1150
Wilmington, DE  19899
(302) 654-1888
(302) 654-2067 (fax)
lashby@ashby-geddes.com
ptrainer@ashby-geddes.com
tlydon@ashby-geddes.com

*Of Counsel:*

Dennis J. Kelly
Paul R. Mastrocola
BURNS & LEVINSON LLP
125 Summer Street
Boston, Massachusetts 02110
(617) 345-3000
(617) 345-3299

Dated: May 4, 2006
169159.1

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
MHS HOLDING ONE, INC. f/k/a
MCCLELLAND HOME HEALTH PHARMACY, INC.

**DEFENDANTS**
MHHP ACQUISITION COMPANY LLC and
OMNICARE, INC.

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Philip Trainer, Jr., Esquire
Ashby & Geddes, 222 Delaware Avenue
Wilmington, DE 19801   (302) 654-1888

Attorneys (If Known)
Unknown

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. § 1332
Brief description of cause: Declaratory Judgment, Breach of Contract & Unjust Enrichment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ In excess of $75,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE
May 4, 2006

SIGNATURE OF ATTORNEY OF RECORD
[signature]

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. __06 - 292__

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF __2__ COPIES OF AO FORM 85.

__5/4/06__
(Date forms issued)

__(signature)__
(Signature of Party or their Representative)

__FRANK JOYCE / PARCELS, INC.__
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action